**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| B.W., | : | |
| Plaintiff | : | **CIVIL ACTION NO. 3:19-1146** |
| v | : | **(JUDGE MANNION)** |
| CAREER TECHNOLOGY CENTER OF LACKAWANNA COUNTY and VALLEY VIEW SCHOOL DISTRICT, | : | |
| Defendants | : | |

=   =   =   =   =   =   =   =   =   =   =   =   =

| | | |
|---|---|---|
| R.P., | : | |
| Plaintiff | : | **CIVIL ACTION NO. 3:19-1147** |
| v | : | **(JUDGE MANNION)** |
| CAREER TECHNOLOGY CENTER OF LACKAWANNA COUNTY and VALLEY VIEW SCHOOL DISTRICT, | : | |
| Defendants | : | |

=   =   =   =   =   =   =   =   =   =   =   =   =

| | | |
|---|---|---|
| M.W. and T.W., as parents and natural guardians of M.W., | : | |
| | : | |
| Plaintiffs | : | **CIVIL ACTION NO. 3:19-1148** |
| v | : | |
| | : | **(JUDGE MANNION)** |
| CAREER TECHNOLOGY CENTER OF LACKAWANNA COUNTY and LAKELAND SCHOOL DISTRICT, | : | |
| | : | |
| Defendants | : | |

=   =   =   =   =   =   =   =   =   =   =   =   =

J.K.,                                   :

    Plaintiff                       :     CIVIL ACTION NO. 3:19-1149

       v                          :
                                              (JUDGE MANNION)
CAREER TECHNOLOGY CENTER  :
OF LACKAWANNA COUNTY and
MID VALLEY SCHOOL DISTRICT,  :

    Defendants                      :

= = = = = = = = = = = = =

J.R., a minor, by his parents and   :
natural guardians, S.M. & J.R.,
                                      :
    Plaintiffs          CIVIL ACTION NO. 3:19-1150
                                      :
       v
                                      :     (JUDGE MANNION)
CAREER TECHNOLOGY CENTER
OF LACKAWANNA COUNTY and   :
LAKELAND SCHOOL DISTRICT,
                                      :
    Defendants

= = = = = = = = = = = = =

R.P. a minor, by his parent and   :
natural guardian, D.P.,
                                      :
    Plaintiff          CIVIL ACTION NO. 3:19-1153
                                      :
       v
                                      :     (JUDGE MANNION)
CAREER TECHNOLOGY CENTER
OF LACKAWANNA COUNTY and   :
SCRANTON SCHOOL DISTRICT,
                                      :
    Defendants

= = = = = = = = = = = = =

- 2 -

**M.W. as parent and natural
guardian of S.W., a minor,**                          :

                                                     :

     **Plaintiffs**                         **CIVIL ACTION NO. 3:19-1154**

                                                     :

     **v**                                  **(JUDGE MANNION)**

                                                     :

**CAREER TECHNOLOGY CENTER
OF LACKAWANNA COUNTY and**         :
**LAKELAND SCHOOL DISTRICT,**

                                                     :

     **Defendants**

                                                     :

**=   =   =   =   =   =   =   =   =   =   =   =   =   =**

**E.P.,**                                            :

     **Plaintiff**             :         **CIVIL ACTION NO. 3:19-1155**

                                                     :

     **v**                     :         **(JUDGE MANNION)**

**CAREER TECHNOLOGY CENTER**        :
**OF LACKAWANNA COUNTY and**
**LAKELAND SCHOOL DISTRICT,**        :

     **Defendants**             :

**=   =   =   =   =   =   =   =   =   =   =   =   =   =**

**JOHN JOE DOE C.D.**                                :

     **Plaintiff**             :
                                                         **CIVIL ACTION NO. 3:20-88**

     **v**                     :
                                                         **(JUDGE MANNION)**

**CAREER TECHNOLOGY CENTER**        :
**OF LACKAWANNA COUNTY and**
**SCRANTON SCHOOL DISTRICT,**        :

     **Defendants**             :

- 3 -

**MEMORANDUM**

This government schools sexual abuse case involves nine minor Plaintiffs who attended four school districts ("Districts") and the Career Technology Center of Lackawanna County ("CTC") where they were sexually abused by their automotive technology teacher and now convicted sexual predator: Richard Humphrey. Each Plaintiff brings a separate case against CTC and his respective school district as displayed in the caption above. Many of the Plaintiffs' claims survived the Defendants' motions to dismiss. CTC and the Districts now bring motions for summary judgment on Plaintiffs' remaining claims.

This case turns on who knew what when. The Plaintiffs have come forward with sufficient evidence showing the appropriate persons at CTC knew enough such that something could have and should have been done before they were sexually abused. As such, a reasonable jury could find in Plaintiffs' favor on both their federal statutory and state common law claims. However, Plaintiffs have not come forward with sufficient evidence to make a similar showing as to the Districts, who did not employ Humphrey. Furthermore, Plaintiffs B.W. and J.R., do not dispute CTC's motion for summary judgment on their Title IX retaliation claims. Therefore, the court will **DENY** CTC's motions for summary judgement on

- 4 -

all but B.W. and J.R.'s retaliation claims which it will **GRANT**. The court will also **GRANT** the Districts' motions as to all claims. A trial will be promptly scheduled on all remaining claims.

## I.   FACTUAL BACKGROUND

The following essential, undisputed facts are taken from the parties' submissions to the extent they are consistent with the evidence in the record. (*See* Docs. 103, 104, 115, 131, 147, 162, and 167).[1]

CTC is a vocational-technical school located in Scranton, Pennsylvania that operates under a Joint Operating Agreement by a Joint Operating Committee ("JOC"). CTC consists of a number of participating school districts, including but not limited to the Scranton, Valley View, Mid Valley, and Lakeland School Districts. A representative from each participating school district sits on the JOC. The JOC has broad powers to approve policies, budgets, purchases of land, and execution of contracts. It also approves the hiring and termination of CTC employees.

On July 16, 2015, the JOC approved the hiring of Richard Humphrey as an automotive technology instructor. Over the course of the

_____

[1] All docket citations refer to *B.W. v. CTC et al.,* Civil Action Number: 3:19-1146.

following two school years, Humphrey sexually abused Plaintiffs—nine (9) minor male students in his automotive technology class. Humphrey made unwanted physical contact with all nine Plaintiffs including by groping and rubbing their genital areas. Humphrey also made a litany of inappropriate comments about Plaintiffs' bodies and sex lives. Plaintiffs claim that three other CTC teachers or teacher's aides, Joseph Granteed ("Mr. Granteed"), Louis Morgantini ("Mr. Morgantini"), and Robert Hudak ("Mr. Hudak"), CTC's Assistant Director, George Pelepko-Filak ("Mr. Filak"), and Director, Dr. George Baileys ("Dr. Baileys"), as well as an outside educational consultant employed by the Northeast Intermediate Unit (NEIU), Dr. Karla Carlucci, ("Dr. Carlucci"), were told about or witnessed firsthand, Humphrey's sexually abusive conduct towards Plaintiffs, but did not report that conduct to law enforcement, or otherwise stop it from continuing for several months. All these individuals deny any knowledge of Humphrey's conduct.

On May 13, 2017, a parent reported Humphrey to the Pennsylvania Department of Human Services via ChildLine. The Scranton Police Department began a criminal investigation into Humphrey that same day. Two days later on May 15, 2017, Humphrey was suspended with pay by CTC. The JOC accepted Humphrey's resignation effective June 12, 2017.

Humphrey was later charged and convicted of multiple sex crimes in the Lackawanna County Court of Common Pleas. Specifically, Humphrey pled guilty to 11 counts of indecent assault and one count of corruption of a minor. He was adjudicated a violent sexual predator and sentenced on July 25, 2018, to serve 11 to 33 months in the Lackawanna County Prison.

Subsequently, Plaintiffs filed civil complaints against CTC and their respective school districts in the Lackawanna County Court of Common Pleas. Defendants removed all these complaints to this court. (Doc. 1.) The court dismissed several of the counts in Plaintiffs' complaints on motion to dismiss. (Doc. 20.) CTC and the Districts have now filed motions for summary judgment on Plaintiffs; remaining counts: Count I – Title IX Sexual Harassment; Count III Title IX Retaliation (Plaintiffs B.W. and J.R. vs CTC); Count IV – 42 U.S.C. Section 1983 Fourteenth Amendment Violation; and Count VI – 42 U.S.C. Section 1983 Failure to Train & Supervise. (Docs. 60 and 62.)

While these motions were pending, Plaintiffs were given leave to amend their complaints to include additional claims against all Defendants pursuant to 42 Pa.C.S.A. Section 8542(b)(9)—a law enacted after the original complaint was filed, which allows Plaintiffs to recover against CTC and the Districts under Pennsylvania common law. (Doc. 120.) In

particular, Plaintiffs have added the following counts their complaints: Count VII – Negligence; Count VIII – Vicarious Liability; and Count IX – Negligent Hiring, Retention, Supervision, Investigation, and Evaluation. (Doc. 121.) CTC and the Districts were thereafter ordered to file supplemental motions for summary judgment on these counts as well. (Doc. 138.) After multiple requests for lengthy deadline extensions, resulting in nearly a year of delays, Defendants' summary judgment motions are fully briefed and finally ripe for disposition.

## II.    **LEGAL STANDARD**

Summary judgment is appropriate "if the pleadings, the discovery [including, depositions, answers to interrogatories, and admissions on file] and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Turner v. Schering–Plough Corp.*, 901 F.2d 335, 340 (3d Cir. 1990). A factual dispute is genuine if a reasonable jury could find for the non-moving party and is material if it will affect the outcome of the trial under governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Aetna Cas. & Sur. Co. v.*

*Ericksen*, 903 F.Supp. 836, 838 (M.D. Pa. 1995). At the summary judgment stage, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249; *see also Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (a court may not weigh the evidence or make credibility determinations). The court must consider all evidence and inferences drawn therefrom in the light most favorable to the non-moving party. *Andreoli v. Gates*, 482 F.3d 641, 647 (3d Cir. 2007).

To prevail on summary judgment, the moving party must affirmatively identify those portions of the record which demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323–24. The moving party can discharge its burden by showing that "on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." *In re Bressman*, 327 F.3d 229, 238 (3d Cir. 2003); *see also Celotex*, 477 U.S. at 325. If the moving party meets this initial burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts," but must show sufficient evidence to support a jury verdict in its favor. *Boyle v. County of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998)

(quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). The non-moving party must direct the court's attention to specific, triable facts by "*citing particular parts* of materials in the record." Fed. R. Civ. P. 56(c)(1)(A) (emphasis added); *see United States v. Starnes*, 583 F.3d 196, 216 (3d Cir. 2009) ("Judges are not like pigs, hunting for truffles buried in briefs.") (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir.1991)); *see also DeShields v. Int'l Resort Properties Ltd.*, 463 F. App'x 117, 120 (3d Cir. 2012) ("If factual support for [a plaintiff's] claim exist[s] in the record, it [i]s incumbent upon her to direct the District Court's attention to those facts.").

If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to [the non-movant's] case, and on which [the non-movant] will bear the burden of proof at trial," Rule 56 mandates the entry of summary judgment because such a failure "necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322–23; *Jakimas v. Hoffman–La Roche, Inc.*, 485 F.3d 770, 777 (3d Cir. 2007).

Finally, "[i]nasmuch as Pennsylvania law governs this action[,] we treat Pennsylvania Supreme Court opinions as binding precedent and Pennsylvania Superior Court opinions as persuasive precedent." *State Farm Fire & Cas. Co. v. Estate of Mehlman*, 589 F.3d 105, 107 n.2 (3d

- 10 -

Cir. 2009). If a precise issue has not been addressed by a reported decision of the Pennsylvania Supreme Court, the district court must predict how that court would decide it. *Nationwide Mut. Ins. Co. v Buffetta*, 230 F.3d 634, 637 (3d Cir. 2000).


## III.   DISCUSSION

The parties to the nine above-captioned cases have filed voluminous briefs, statements of material facts, and exhibits to litigate the Defendants' motions for summary judgment. But one need not look long at the parties' submissions to realize that the record, as it relates to CTC is riddled with genuine disputes of material fact which must be decided by a jury. Conversely, it is equally apparent that Plaintiffs have all failed to establish the same as to the Districts, who did not employ or unilaterally oversee Humphrey. Plaintiffs J.R. and B.W. also do not contest CTC's motions for summary judgment on their Title IX retaliation claims.

### A.   TITLE IX (SEXUAL HARASSMENT)

Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal Financial Assistance...." 20 U.S.C. §1681(a). The

United States Supreme Court has held that Title IX encompasses sexual harassment of a student and is enforceable through an implied private right of action for money damages against the given school. *See Franklin v. Gwinnett County Pub. Sch.*, 503 U.S. 60 (1992); *see also Does v. Southeast Delco School District*, 272 F.Supp.3d 656, 688 (E.D. Pa. 2017) (Title IX "forbids discrimination at educational institutions on the basis of sex and allows recovery by victims of physical sexual abuse."); *Douglas v. Brookville Area Sch. Dist.*, 836 F.Supp.2d 329, 342-43 (W.D. Pa. 2011) ("[a] teacher engages in a prohibited form of 'discrimination' [under Title IX] when he or she 'sexually harasses and abuses a student.'") (citation omitted).

Contrary to some of the Defendants' arguments, Plaintiffs, who were assaulted by a convicted sexual predator, do not fail as a matter of law to establish claims for intentional discrimination and harassment under Title IX. *See Douglas v. Brookville Area Sch. Dist.*, 836 F.Supp.2d 329, 344 (W.D. Pa 2011) (citing *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 80 (1998)) ([w]here an individual's interactions with another person are sexual in nature, it is reasonable to assume that those interactions are motivated, at least in part, by the other person's 'sex.'"); s*ee also Chancellor v. Pottsgrove Sch. Dist.*, 501 F. Supp. 2d 695, 708

(E.D. Pa. 2008) ("a high school student who is assigned to a teacher's class does not have the capacity to welcome that teacher's physical sexual conduct.")

Nonetheless, to establish a Title IX claim against a school for sexual harassment, the Plaintiffs must show that: (1) Defendants received federal funds; (2) an appropriate person at Defendants (3) had actual knowledge of facts indicating a substantial danger to students; and (4) acted with deliberate indifference to that danger. *Does*, 272 F.Supp.3d at 688 (citing *Bostic v. Smyrna Sch. Dist.*, 418 F.3d 355, 361 (3d Cir. 2005)); *see also Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 650 (1999) (citing *Gebser v. Lago Vista Ind. Sch. Dist.*, 524 U.S. 274 (1998)).

There is no dispute that CTC and all four Districts receive federal funds. Thus, the motions here turn on whether an appropriate person at CTC *and* each of the four Districts had actual knowledge of the substantial danger Humphrey posed to students and acted with deliberate indifference to that danger.

"An 'appropriate person' ... is, at minimum, an official of the recipient entity with authority to take corrective action to end the discrimination." *Gebser*, 524 U.S. at 277 (1998). A person's job title does not determine if they are an "appropriate person." *Warren ex rel. Good v. Reading Sch.*

- 13 -

*Dist.*, 278 F.3d 163, 173 (3d Cir. 2002). "The authority to supervise a teacher and to investigate a complaint of misconduct implies the authority to initiate corrective measures such as reporting her findings to her superior or to the appropriate school board." *Id.*

Accordingly, under Title IX, a determination of whether a person is an "appropriate person" is based on the person's actual authority to end the discrimination. *Id*. at 172. "[A] school principal who is entrusted with the responsibility and authority normally associated with that position will ordinarily be an 'appropriate person' under Title IX." *Id*. at 171; *see also Douglas v. Brookville Area Sch. Dist*., 836 F.Supp.2d 329, 346 (W.D. Pa. 2011) ("[o]nly an individual with the 'authority to institute corrective measures' can be fairly characterized as an 'appropriate person' under *Gebser*.") (citation omitted). Examples of an "appropriate person" at a school district include the superintendent, assistant superintendent, principal, and assistant principal, provided they had authority to take corrective action to end the discrimination. *Lansberry v. Altoona Area School District*, 318 F.Supp.3d 739, 751 (W.D. Pa. 2018).

"An educational institution has actual knowledge if it knows the underlying facts, indicating sufficiently substantial danger to students, and was therefore aware of the danger." *Bostic,* 418 F.3d at 361 (internal

- 14 -

quotations omitted); *see also Warren*, 278 F.3d at 171 (there must be sufficient evidence to show that "'an appropriate person' had actual knowledge of ... [the] abuse."). "Actual notice cannot be based upon a mere possibility." *Bostic*, 418 F.3d at 361; *see also Moeck v. Pleasant Valley Sch. Dist.*, 179 F.Supp.3d 442, 449 (M.D. Pa. 2016) ("the plaintiff must present evidence that she provided actual notice [of the sexual harassment] to an appropriate official at the school" to state a claim under Title IX) (citation omitted).

"[C]onstructive notice or *respondeat superior* principles [are not sufficient] to permit recovery under Title IX." *Bostic*, 418 F.3d at 361 (citing *Gebser*, 524 U.S. at 285–90). Nor can Title IX liability be based on negligence. *Id*. (citing *Gebser*, 524 U.S. at 285,). Thus, "*Gebser* ... established that a recipient intentionally violates Title IX ... where the recipient is deliberately indifferent to known acts of teacher-student discrimination." *Id*. (quoting *Davis*, 526 U.S. at 643).

A school may also only be liable in damages where their own deliberate indifference to this actual knowledge effectively causes the discrimination. *Davis*, 526 U.S. at 642-643, (citing *Gebser*, 524 U.S. at 291) (Court held that "damages remedy will not lie under Title IX unless an official who at a minimum has authority to address the alleged

- 15 -

discrimination and to institute corrective measures on the [school district's] behalf has actual knowledge of discrimination in the [district's] programs and fails adequately to respond."). This "high standard" seeks to eliminate any risk that the [district] would be liable in damages not for its own official decision but instead for another individual's independent actions. *Davis*, 526 U.S. at 643, (citing *Gebser*, 524 U.S. at 290-291).

Consequently, a school is required to respond to sexual harassment or abuse in a manner that is not "clearly unreasonable." *Davis*, 526 U.S. at 648-49 (school districts are "deemed to be 'deliberately indifferent' to acts of [ ] harassment only where the [district's] response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances."). In order for a response to amount to deliberate indifference to discrimination, there must be "an official decision by the [school district] not to remedy the violation." *Gebser*, 524 U.S. at 290; *see also Does*, 272 F.Supp.3d at 688 ("To show intent, Title IX plaintiffs must show that an appropriate person was personally aware of facts demonstrating a real danger to his or her student body—and that he or she made 'an official decision ... not to remedy the violation.'") (citing *Davis*, 526 U.S. at 642).

CTC argues that Plaintiffs have failed to establish an appropriate person at CTC had actual knowledge of the danger Humphrey posed to students. However, Plaintiffs have submitted abundant evidence that CTC administrators including the two highest ranking administrators, Mr. Filak and Dr. Baileys, were directly told by multiple students about Humphrey's abuse months before a parent finally made a report to ChildLine. Mr. Filak was the Assistant Director of CTC and Dr. Baileys was the Director of CTC at all relevant times. In these positions, both men had the responsibility and authority to take corrective action to stop Humphrey's sexual abuse of Plaintiffs. Thus, they were both clearly appropriate persons under Title IX.

There is no evidence that either Mr. Filak or Dr. Baileys took any action to protect their students upon receiving reports of Humphrey's abuse. In fact, Plaintiffs have submitted evidence that Humphrey's abuse was reported directly to Dr. Baileys after Mr. Filak failed to act on reports he previously received. Nevertheless, according to Plaintiffs, Dr. Baileys, the highest-ranking administrator at CTC, also did not take any corrective action or even attempt to investigate. Such a failure is clearly unreasonable and indicative of deliberate indifference.

Similarly, the Districts argue that Plaintiffs have failed to establish an appropriate person at each District had actual knowledge of the danger Humphrey posed to students. It is undisputed that CTC did not notify the Districts of Humphrey's misconduct until May 13, 2017—when the report to ChildLine was made. Still, Plaintiffs appear to allege that because there is evidence an appropriate person on the JOC knew prior to May 13, 2017, the Districts had actual notice. This alleged appropriate person was Dr. Baileys, an employee of CTC and not the Districts. Some of the Plaintiffs assert that Dr. Baileys' knowledge somehow flows back to the Districts. But they misread the case cited in support of that proposition: *Does*, 272 F. Supp. 3d 656, 689 (E.D. Pa. 2017). The appropriate person at issue in *Does* was a principle in the district at issue, so of course his knowledge would flow back to the district that employed him. Here, Dr. Baileys was not an employee of the Districts and his knowledge does not flow back to them. The fact that he sat on the JOC, which also included representatives of multiple districts not named in this lawsuit, does not by itself impute his knowledge to any of the Districts named or not named herein.

There is evidence Dr. Baileys made regular reports to the JOC, but Plaintiffs have submitted no evidence that prior to May 13, 2017, he

- 18 -

included information about Humphrey's abuse in those reports. Plaintiffs have not submitted any other evidence that any other person made a report to the board members, superintendents, principals, teachers, or staff members of the Districts prior to May 13, 2017.

Even if they did these District administrators would not be appropriate persons since they did not have authority to take unilateral corrective action against Humphrey. Humphrey was a CTC employee. A District acting alone could not have disciplined or terminated him. The JOC collectively did hire Humphrey and could have terminated him but again there is no evidence that the JOC had knowledge they should have terminated him prior to May 13, 2017—at which time they promptly suspended him. Moreover, Plaintiffs cannot claim Title IX liability based on negligence. So even if the JOC was negligent in hiring and failing to adequately supervise Humphrey that negligence cannot support a claim under Title IX against either CTC or the Districts. Accordingly, a reasonable jury could not find the Districts had actual knowledge of Humphrey's abuse.

In addition to the deliberate indifference with actual knowledge standard articulated by the Supreme Court in *Gebser,* CTC argues that Plaintiffs must also satisfy the more stringent test articulated by the

Supreme Court in *Davis*. To assert a Title IX sexual harassment claim under *Davis*, a plaintiff must show that (1) he suffered intentional discrimination because of his sex, (2) the discrimination was pervasive and regular, (3) the discrimination detrimentally affected him, and (4) the discrimination would have detrimentally affected a reasonable person of his sex in his position. *M.S. ex rel. v. Susquehanna Township School Dist.*, 43 F. Supp.3d 412, 429 (M.D. Pa. 2014) (citing *Davis*, 526 U.S. at 650.) To put it more plainly: under *Davis* plaintiffs must establish not only was their school deliberately indifferent to known acts of harassment, but also that their harassment was "so severe, pervasive, and objectively offensive" that it denied them access to educational opportunities. *Davis*, 526 U.S. at 650-52.

Plaintiffs rightfully point out that *Davis* addressed student-on-student or peer harassment, whereas *Gebser*, which had been previously decided, addressed a more analogous case of teacher-on-student harassment. However, the Supreme Court does not distinguish these cases from one another. In *Davis* the Supreme Court was asked whether students could sue their schools under Title IX for harassment by other students. Based on its prior ruling in *Gebser* the Supreme Court felt "constrained to conclude that student-on-student sexual harassment, if

sufficiently severe, can likewise rise to the level of discrimination actionable under the statute." *Davis,* 526 U.S. 629, 650 (1999). But the Court found that "in the context of student-on-student harassment, damages are available only where the behavior is so severe, pervasive, and objectively offensive that it denies its victims the equal access to education that Title IX is designed to protect." *Id*. at 652.

Nevertheless, the Court also articulates a general rule seemingly applicable to all forms of harassment:

> We thus conclude that funding recipients are properly held liable in damages only where they are deliberately indifferent to sexual harassment, of which they have actual knowledge, that is so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school.

*Id.* at 650. The Court does not limit this combined *Gebser* / *Davis* standard to only cases of student-on-student harassment.[2] Moreover, the Court held:

> [T]he relationship between the harasser and the victim necessarily affects the extent to which the misconduct can be said to breach Title IX's guarantee of equal access to

---

[2] The court also notes that this standard parallels the standard used in all Title VII cases irrespective of whether the harassment is employer-on-employee or employee-on-employee. *See Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986) (For sexual harassment to be actionable, it must be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.) (internal quotations omitted.)

> educational benefits and to have a systemic effect on a program or activity. Peer harassment, in particular, is less likely to satisfy these requirements than is teacher-student harassment.

*Id*. 653. This appears to indicate that cases of teacher-on-student harassment must also show misconduct that denies students educational opportunities.

Amid this context courts in this district have applied *Davis* to multiple cases of teacher-on-student harassment. *See e.g., M.S. ex rel. v. Susquehanna Township School Dist*., 43 F. Supp.3d 412 (M.D. Pa. 2014); *Moeck v. Pleasant Valley School District*, 179 F. Supp. 3d 442 (M.D. Pa. 2016); *E.N. v. Susquehanna Township School District*, 2010 WL 4853700 (M.D. Pa. Nov. 23, 2010). The Third Circuit has not overturned these cases or otherwise held that *Davis* is inapplicable to cases of teacher-on-student harassment.

Plaintiffs do highlight two Third Circuit cases that address teacher-on-student harassment without *Davis*, but in both cases the Circuit was only asked to decide whether an appropriate person at defendant schools had actual knowledge of alleged sexual harassment per *Gebser*. *See C.K. v. Wrye*, 751 Fed App'x. 179, 183 (3d Cir. 2018) ("the parties dispute only whether the institutional defendants had "actual knowledge" of the danger

- 22 -

Wrye posed to students."); *M.S. v. Susquehanna Township School Dist*., 969 F. 3d 120, 126 (3d Cir. 2020) ("[w]e are asked to decide whether a perpetrator of sex-based harassment who has authority to address Title IX violations and has knowledge of his own sex-based harassment, like Sharkey, satisfies the appropriate person standard.") Since the District Courts in both cases granted summary judgement on the initial issue of actual knowledge by an appropriate person, they did not need to analyze the severity of the alleged harassment under *Davis*.

The Third Circuit has also upheld a jury instruction in a teacher-on-student harassment case that only applied *Gebser*. *See Bostic v. Smyrna School Dist*. 418 F. 3d 355 (3rd Cir. 2005). However, the jury instruction in *Bostic* was not appealed for failing to apply *Davis*. After a jury found her school not liable, plaintiff appealed saying the District Court's jury instruction following *Gebser* did not properly define actual knowledge and appropriate person. Based on both *Gebser* and *Davis*' use of those terms the Circuit disagreed and affirmed the *Gebser* only jury instruction. But again, the Circuit was not asked to address whether *Davis* is applicable to cases of teacher-on-student harassment. So, its silence on *Davis* cannot be construed one way or another.

Beyond the Third Circuit the Eleventh Circuit has held that *Davis* does not apply to cases of teacher-on-student harassment. *See Sauls v. Pierce Cnty. Sch. Dist.*, 399 F.3d 1279, 1284 (11th Cir. 2005). ("Because this case involves teacher-on-student harassment, Appellants need not establish Blythe's misconduct was "so severe, pervasive, and objectively offensive" that it denied Dustin equal access to educational programs or opportunities.") The Sixth Circuit in *dicta* has also found that "the *Davis* decision layered on an additional element necessary to make a claim for *peer* harassment under Title IX." *Warmer v. Univ. of Toledo*, 27 F.4th 461, 468 (6th Cir.), *cert. denied,* 143 S. Ct. 444 (2022). (emphasis added.)

Conversely the Fourth and Tenth Circuits have required plaintiffs in cases of teacher-on-student harassment to prove such harassment was severe and pervasive under *Davis*. *See Jennings v. Univ. of N. Carolina*, 482 F.3d 686, 695 (4th Cir. 2007); *Escue v. N. OK Coll.*, 450 F.3d 1146, 1152 (10th Cir. 2006) (citing *Murrell v. Sch. Dist. No. 1, Denver, Colo.,* 186 F.3d 1238, 1246 (10th Cir.1999). The First Circuit has similarly recognized that "while *Gebser* does not expressly address severity and pervasiveness in the context of teacher-on-student harassment, some degree of severity or pervasiveness must be present for harassment to result in 'exclu[sion]' or 'discrimination' under Title IX, 20 U.S.C.

§1681(a)." *Doe v. Pawtucket Sch. Dep't*, 969 F.3d 1, 10–11 (1st Cir. 2020).

Nonetheless another case in this District docketed earlier this year, but after the parties briefed this particular issue, further noted "[w]hile Courts of Appeals are divided on whether *Davis* applies to teacher-on-student harassment, decisions from the Third Circuit at least imply that it does not." *Wassel v. Pennsylvania State Univ.*, 2024 WL 2057514, at *10 (M.D. Pa. May 7, 2024) (Brann, J.). Although the court ultimately still applied *Davis* because *both* parties in *Wassel* cited that standard in their briefings, he cites two additional Third Circuit cases that he suggests cast doubt on the applicability of *Davis*' severity and pervasiveness requirement to teacher-on-student harassment cases. *See Saxe v. State Coll. Area Sch. Dist.*, 240 F.3d 200, 205 (3d Cir. 2001); *Bernard v. E. Stroudsburg Univ.*, 700 F. App'x 159, 163 (3d Cir. 2017).

Although the Third Circuit in *Saxe* only references *Davis*' severity and pervasiveness requirement in the context of student-on-student harassment, that case only addressed the constitutionality of a public school's anti-discrimination policy. The Third Circuit was not required to and did not analyze the legal viability of an actual harassment claim under Title IX in *Saxe*. Likewise, the Third Circuit in *Bernard* affirmed the District

Court's grant of defendant's summary judgement motion in a case of teacher-on-student harassment because plaintiffs failed to establish deliberate indifference under *Gebser*. The court again was not required to and did not address the severity of the alleged harassment plaintiff suffered under *Davis*.

*Wassel* also cites an opinion from the District of New Jersey where Magistrate Judge Pascal in *dicta* explicitly rejected the argument that *Davis* requires plaintiffs in teacher-on-student harassment cases to plead not only intentional discrimination, but actual knowledge of severe or pervasive discrimination and deliberate indifference. *N.N. on Behalf of C.M.U. v. N. Burlington Cnty. Reg'l Sch. Dist.*, 2023 WL 9017175, at *5 n. 5 (D.N.J. Dec. 29, 2023). Specifically, the court wrote "because Plaintiff's claims are based on teacher-student discrimination—not discrimination by a third-party, such as peers—*Davis* is inapplicable." *Id.* (citing *Franklin v. Gwinnett Cnty. Pub. Schs.*, 503 U.S. 60, 74-75 (1992)).

This court sees wisdom in this reasoning but given the aforementioned authority especially the Supreme Court's language in *Davis*, indicating that teacher-on-student harassment cases must also show a denial of an educational opportunity, this court is inclined to apply *Davis* to that extent here. If plaintiffs alleging teacher-on-student

harassment must show a denial of an educational benefit, there needs to be a standard by which to judge that denial. *Davis* provides such a standard. A showing of deliberate indifference with actual knowledge by an appropriate person alone does not indicate whether an educational benefit was denied. That said the Supreme Court's emphasis in *Davis* on the relationship between the harasser and the victim as well as its pronouncement in *Gebser* "that a student suffers extraordinary harm when subjected to sexual harassment and abuse by **a teacher**, and that the teacher's conduct is reprehensible and undermines the basic purposes of the educational system" *Gebser,* 524 U.S. at 292 (emphasis added), leads this court to further conclude that teacher-on-student harassment is *per se* severe, pervasive, and objectively offensive.

Even if teacher-on-student harassment did not *per se* satisfy *Davis*, a reasonable jury could find that Humphrey's sexual abuse of Plaintiffs constituted severe, pervasive, and objectively offensive sexual harassment that denied them an educational opportunity. As previously stated, it is clear Plaintiffs can show evidence of intentional discrimination by Humphrey who was criminally convicted of assaulting them. That discrimination, as manifested in regular gender motivated assaults and inappropriate comments over the course of several months, detrimentally

affected Plaintiffs, undermining all their automotive training experiences and leading some to even stop attending CTC. Furthermore, a reasonable male student, who was similarly abused by one of their teachers, would likewise have been detrimentally affected. Consequently, Plaintiffs' Title IX sexual harassment claims against CTC meet both the *Gebser* and *Davis* tests.

Therefore, the motions for summary judgment of CTC will be **DENIED** but the motions of the Districts will be **GRANTED** with respect to Plaintiffs' Title IX sexual harassment claims.

### B.   42 U.S.C. – SECTION 1983

42 U.S.C. Section 1983 is the vehicle by which private citizens may seek redress for violations of federal constitutional rights committed by state officials. To state a cause of action under Section 1983, a plaintiff must allege that: (1) the conduct complained of was committed by persons acting under color of state law; and (2) the conduct violated a right, privilege, or immunity secured by the Constitution or laws of the United States. *See Harvey v. Plains Twp. Police Dep't*, 421 F. 3d 185, 189 (3d Cir. 2005). It is undisputed that CTC and the Districts are state actors for the purposes of Section 1983. Thus, the issue here is whether Defendants' conduct violated Plaintiffs' federally protected rights.

- 28 -

The 14th Amendment prohibits a state from "depriv[ing] any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV, §1. "To prevail on a substantive due process claim, a plaintiff must prove that they have a 'fundamental' liberty interest implicating Fourteenth Amendment protection and that a defendant's conduct [concerning] said interest was 'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" *Kobrick*, 2017 WL 3839946, *6 (citation omitted). As the court in *Kobrick*, explained:

> Among the fundamental liberty interests protected by substantive due process is the "right to bodily integrity." *Albright v. Oliver*, 510 U.S. [266] 255, 272 (citing *Planned Parenthood of Se. Pa. v. Casey*, 505 U.S. 833, 847-49, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992)); *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 235 (3d Cir. 2008) (citations omitted). This right includes the right to be free from "invasion of ... personal security through sexual abuse."

*Id.* at *7 (*citing Stoneking v. Bradford Area Sch. Dist*., 882 F.2d 720, 726 (3d Cir. 1989), cert. denied, 493 U.S. 1044 (1990).[3] In the public-school context, the Third Circuit has expressly held that the Due Process Clause

---

[3] The court recognizes that *Planned Parenthood of Se. Pa. v. Casey*, was overruled in *Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215 (2022), but only insofar as *Casey* provided for a federal constitutional right to abortion. *Dobbs* did not eliminate the federal constitutional right to bodily integrity at issue here.

encompasses and defends a student's right "to be free from sexual abuse by school staff." *Id.*

Plaintiffs claim that CTC and the Districts, through their policymaking officials, maintained and endorsed policies and practices that resulted in violations of these constitutional rights. Plaintiffs also claim that defendants failed to properly train and supervise their teachers to prevent the known and pervasive sexual abuse that they and other students were subjected to by Humphrey in further violation of their rights.

Nevertheless, as local government entities Defendants can be held liable under Section 1983 only if Plaintiffs show that the violation of their federally protected rights resulted from the enforcement of a "policy" or "custom" of Defendants. *See Monell v. Dep't. of Soc. Servs.*, 436 U.S. 658, 694 (1978). A court may find that a municipal policy exists when a "'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict." *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481, (1986)). It is also possible for a court to find the existence of a municipal policy in "the isolated decision of an executive municipal policymaker." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 139 (1988). "A course of conduct is

- 30 -

considered to be a 'custom' when, though not authorized by law, 'such practices of state officials [are] so permanent and well settled' as to virtually constitute law." *Andrews*, 895 F.2d at 1480 (citations omitted). There must be a "direct causal link" between the municipal policy or custom and the alleged constitutional violation. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989).

Likewise, local government entities such as CTC and the Districts are not liable under Section 1983 merely for employing someone who violates a person's civil rights. *See Mann v. Palmerton Area School Dist.*, 33 F.Supp.3d 530, 540-41 (M.D. Pa. 2014) ("[m]unicipal liability only attaches when a plaintiff demonstrates that an official policy or custom caused the asserted constitutional deprivation.") (citation omitted); *Beck v. City of Pittsburgh*, 89 F.3d 966, 972 (3d Cir. 1996) (municipal liability applies "to only those constitutional torts actually caused by the municipality."). The plaintiff bears the burden of identifying the policy or custom. *Id*. This rule ensures that a municipality will only be liable where it is the "moving force" behind the plaintiff's injury. *Id*. Plaintiffs can also show a custom by "evidence of knowledge and acquiescence." *Beck*, 89 F.3d at 971. If a plaintiff establishes a custom, he must also "demonstrate that, through its deliberate conduct, [defendant school] was the 'moving

force' behind [his alleged due process violation]." *Bd. of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 404 (1997).

"Additionally, if the policy at issue relates to a failure to train or supervise municipal employees, "liability under section 1983 requires a showing that the failure amounts to 'deliberate indifference' to the rights of persons with whom those employees will come into contact." *Carter v. City of Phila.*, 181 F.3d 339, 357 (3d Cir. 1999) (citation omitted). Such a failure to train or supervise municipal employees "can ordinarily be considered deliberate indifference only where the failure has caused a pattern of violations." *Berg v. Cty. of Allegheny*, 219 F.3d 261, 276 (3d Cir. 2000). However, a plaintiff may also show deliberate indifference by presenting evidence that officials were aware of the risk of constitutional violations and the alternatives to preventing such harm, but either "deliberately chose not to pursue these alternatives or acquiesced in a longstanding policy or custom of inaction in this regard." *Simmons v. City of Philadelphia*, 947 F.2d 1042, 1064 (3d Cir. 1991); s*ee also Robinson v. Fair Acres Geriatric Center*, 722 Fed. App'x. 194, 199 (3d Cir. 2018) ("In order for a failure-to-train claim to support *Monell* liability, a plaintiff must show 'that in light of the duties assigned to [the relevant employees,] the need for more or different training is so obvious, and the inadequacy

- 32 -

so likely to result in the violation of constitutional rights, that the policymakers of the [municipality] can reasonably be said to have been deliberately indifferent to the need.'") (citation omitted).

Plaintiffs argue that Dr. Baileys and Mr. Filak's failures, to stop Humphrey's abuse are isolated decisions of an executive municipal policy maker that impose *Monell* liability on Defendants. CTC asserts that Dr. Baileys and Mr. Filak did not have actual knowledge of Humphrey's abuse and in turn could not have stopped it. But the record is rife with evidence that students directly reported Humphrey's abuse to both Dr. Baileys and Mr. Filak. Neither administrator took any action based on these reports and as a result Humphrey's abuse was allowed to continue unabated.

Plaintiffs further argue that the decisions of CTC's policy makers impose *Monell* liability on the Districts. The court disagrees. Plaintiffs do not cite any legal authority for holding the Districts liable for the actions of CTC employees. Furthermore, the record does not indicate that any District employee received reports about Humphrey's abuse let alone failed to act. In fact, it is undisputed that the Districts did not receive notice of Humphrey's abuse until May 13, 2017.

Plaintiffs still allege that CTC and the Districts' failure to train and supervise their employees creates an additional basis for imposing *Monell*

- 33 -

liability. To survive summary judgment on this claim, Plaintiffs must show a dispute of material fact as to whether "there was: (1) an 'identified deficiency' in training (2) caused by a deliberate indifference to their rights (3) that 'actually caused' the constitutional violation." *Goodwin v. Pennridge Sch. Dist.*, 389 F. Supp. 3d 304, 321 (E.D. Pa. 2019), quoting *Thomas v. Cumberland Cnty.*, 749 F.3d 217, 222 (3d Cir. 2014)). The Plaintiffs have shown such a dispute as to CTC but not the Districts.

The record shows that CTC's written policies and procedures for reporting sexual abuse were inconsistent with Pennsylvania law. Specifically, Pennsylvania law requires teachers to report any reasonable suspicion of child abuse to ChildLine first and then to their school's administrator. However, during the relevant time CTC directed its teacher to report suspected abuse only to the school building administrator. Furthermore, there is evidence CTC minimized the seriousness of failures to report abuse by characterizing them as only summary offenses when in fact they are felonies.

CTC contends that this inconsistency was not the proximate cause of Plaintiffs' actions because its policy still directed employees to report child abuse to administrators who would then report the abuse to ChildLine and thus achieved the same outcome. CTC also contends that

despite the shortcomings of its written policies, it still directed its employees to follow state law. Nonetheless Plaintiffs have submitted evidence that at least three CTC teachers or teachers' aides, Mr. Hudak, Mr. Morgantini, and Mr. Granteed, and an outside consultant, Dr. Carlucci, directly witnessed or were told about Humphrey's abuse of Plaintiffs and did not report it. Only after a parent reported Humphrey to ChildLine did CTC take steps to protect its students from his abuse. Given this systematic failure to report, a reasonable jury could find that the training deficiency at CTC identified by Plaintiffs was the result of deliberate indifference to their rights and actually caused their abuse.

Nonetheless Plaintiffs have not identified a similar training deficiency by the Districts. While there is evidence the JOC approved a policy incompatible with Pennsylvania law, none of Districts through their representatives on the JOC could have unilaterally approved that policy. Moreover, Plaintiffs have not even submitted evidence that the individual representatives of any of the Defendant Districts on the JOC voted to approve the incompatible policy. Even if they did under *Monell* the Districts cannot be held vicariously liable for the acts of their employees unless that employee's acts represented the official policy of their

Districts, which is not indicated by the record.[4] Nor can they be held liable for acts of independent CTC employees. CTC employees were also not District employees. Thus, contrary to Plaintiffs' assertions, a reasonable jury could not find the Districts' failure to train its employees, caused violations of Plaintiffs' constitutional rights. Without evidence of any other policy, specifically and unilaterally adopted by the individual Districts, that proximately caused Plaintiffs' abuse at CTC, Plaintiffs failure to train claims against the Districts fail as a matter of law.

Therefore, the motions for summary judgment of CTC will be **DENIED** but the motions of the Districts will be **GRANTED** with respect to Plaintiffs' Section 1983 claims.

### C.   TITLE IX RETALIATION (J.R. AND B.W. V. CTC)

"Although the statute does not specifically mention retaliation, it is settled that retaliatory conduct is within the broad prohibition of

---

[4] Some Plaintiffs' claim that each District was represented on the JOC by its superintendent, but the Defendants rightfully point out this was not the case for all Districts. Otherwise, Plaintiffs have not pointed to evidence that any of the Districts' representatives on the JOC had policymaking authority on behalf of their Districts and again even if they did their ability to act on the JOC was not unilateral but merely equal to that of the representatives from multiple districts not named in this lawsuit. Without such unilateral policymaking authority regarding CTC the Districts cannot be held liable for its policies under *Monell*.

'discrimination' made unlawful by Title IX." *S.K. v. North Allegheny School District*, 168 F.Supp.3d 786, 803 (W.D. Pa 2016) (citing *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 173-74 (2005). No doubt that "retaliation taken against an individual because that individual has complained about sex discrimination is a covered form of discrimination under Title IX." *Id*. at 805 (citing *Jackson*, 544 U.S. at 173). "Thus, to assert a viable claim for retaliation under Title IX, Plaintiff[s] must plead facts sufficient to plausibly show that [defendants] "retaliated against [them] because [they] complained of sex [abuse and harassment]." *Frazer v. Temple University*, 25 F.Supp.3d 598, 615 (E.D. Pa. 2014) (citing *Jackson*, 544 U.S. at 184, 125 S.Ct. 1497).

Specifically, "[t]o establish a *prima facie* case of retaliation, a plaintiff must show: (1) that he or she engaged in protected activity [under Title IX]; (2) defendant had knowledge of the protected activity; (3) adverse school-related action was taken against plaintiff; and (4) a causal connection between the protected activity and the adverse action." *S.K. v. North Allegheny School District*, 168 F.Supp.3d at 803-04 (citing *Yan v. Penn State University*, 529 Fed. App'x. 167, 171 (3d Cir. 2013)). Further, plaintiffs must show "intentional conduct ... to recover on a claim of retaliation." *Id*. at 805. "The first step in any assessment of a retaliation

claim is to identify what conduct, if any, a reasonable jury could causally link to the existence of retaliatory animus." *Id.* at 806 (citations omitted). Retaliatory animus is "(1) intentional conduct aimed at inflicting injury or harm (2) taken because of a complaint about a perceived form of prohibited conduct." *Id.*

"Protected activities include complaints of sexual discrimination to the courts, government agencies, or the funding recipient." *Dawn L. v. Greater Johnstown School Dist.*, 586 F.Supp.2d 332, 374 (W.D. Pa. 2008) (citations omitted). "To establish the requisite causal connection, Plaintiff[s] must allege facts to demonstrate either: '(1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link.'" *Frazer*, 25 F.Supp.3d at 615 (citing *Cooper v. Menges*, 541 Fed. App'x. 228, 232 (3d Cir. 2013)).

CTC argues that both B.W. and J.R. have failed to establish a viable Title IX retaliation claim. Neither B.W. nor J.R. dispute this argument or otherwise offer evidence that a reasonable jury could find they have a

viable retaliation claim.[5] Therefore, CTC's motions for summary judgment on B.W. and J.R.'s Title IX retaliation claims will be **GRANTED**.

### D.   42 PA. C.S.A. SECTION 8542(B)(9)

The Pennsylvania Political Subdivision Tort Claims Act (PSTCA) governs the ability of a party to sue a local government entity for its negligent acts and omissions. 42 Pa. Cons. Stat. §§8541-8564. Section 8542(b) of the statute outlines those acts for which the Commonwealth has not granted sovereign immunity to local government entities like Defendants. During the pendency of these lawsuits, the Commonwealth in response to increased awareness of public institutions covering up sexual abuse, amended the PSTCA to add an additional exception under subsection (b) which reads as follows:

> Sexual-Abuse Conduct which constitutes an offence enumerated under section 5551(7) (relating to no limitation applicable) if the injuries to the plaintiff were caused by actions or omissions of the local agency which constitute negligence.

42 Pa. C.S.A. §8542(b)(9). Plaintiffs argue that through his conduct Humphrey committed institutional sexual assault, which is one of the enumerated offences under §5551(7), and therefore Defendants are not

---

[5]  B.W. and J.R. also do not make any retaliation claims against their respective Districts.

immune from suit over their negligent acts and omissions related to such conduct.

Despite correctly recognizing that the crime of institutional sexual assault is an enumerated offense under §5551(7), and occurs in relevant part when a school employee makes indecent contact with a student at school, CTC paradoxically and without explanation argues that even accepting their testimony as true Plaintiffs have failed to show Humphrey's conduct falls within the conduct enumerated in §5551(7). Plaintiffs have testified that Humphrey groped and rubbed their genital areas while they were in his classroom. Such conduct is clearly indecent contact of student by a teacher at school and constitutes institutional sexual assault as enumerated in §5551(7). CTC's claims to the contrary are contradicted by the record and appear to lack any good faith basis.

The Districts more appropriately do not dispute that Humphrey's conduct falls within the scope of §5551(7), making them in turn liable under §8542(b)(9). However, CTC and Districts also argue that a reasonable jury could not find them liable for Humphrey's conduct on Plaintiffs' negligence, vicariously liability, or negligent hiring, retention, evaluation, supervision, investigation, and evaluation claims. The court addresses each of these claims in turn.

### 1. NEGLIGENCE

To prove negligence in Pennsylvania, a plaintiff must establish the existence of "a duty to conform to a certain standard for the protection of others against unreasonable risks; the defendant's failure to conform to that standard; a causal connection between the conduct and the resulting injury; and actual loss or damage to the plaintiff." *Brewington for Brewington v. City of Philadelphia*, 199 A.3d 348, 355 (Pa. 2018). Defendants argue that Plaintiffs cannot prove negligence here because Plaintiffs have not established that Defendants owed them a duty.

Pennsylvania courts weigh five factors in determining whether to impose a duty on a defendant: (1) the relationship between the parties; (2) the social utility of the actor's conduct; (3) the nature of the risk imposed and foreseeability of the harm incurred; (4) the consequences of imposing a duty on the actor; and (5) the overall public interest in the proposed solution. *Althaus ex rel. Althaus v. Cohen*, 756 A.2d 1166, 1169 (Pa. 2002). No single factor is dispositive. *Phillips v. Cricket Lighters*, 841 A.2d 1000, 1008 (Pa. 2003). Rather, courts must "assign[ ] appropriate weight to each policy factor, depending on the particularized nature of the asserted duty at hand and context." *Seebold v. Prison Health Servs.,* 57 A.3d 1232, 1249 (Pa. 2012).

Relevant to the first factor Plaintiffs assert that schools like Defendants are required to protect their students because school attendance is compulsory in Pennsylvania. However, Defendants correctly point out that the Third Circuit has found Pennsylvania law does not create a special relationship between public schools and their students to automatically impose a general duty of care. *See D.R. by L.R. v. Middle Bucks Area Vocational Technical Sch.*, 972 F.2d 1364, 1369-73 (3d Cir. 1992) (citing 24 P.S. §13–1327) (no "special relationship" based upon restraint of liberty exists between schools and students under Pennsylvania law because students' parents remain their primary caretakers, despite students' presence in public or vocational technical schools.).

Relevant to the third factor Defendants argue that Humphrey's conduct was not foreseeable. However, the record contains evidence that CTC failed to train its staff to report child and sexual abuse as required by state law and students allegedly reported ongoing sexual abuse by Humphrey to multiple CTC employees, who did nothing to stop that abuse, which continued unabated for several months. Accordingly, a reasonable jury could find Plaintiffs' injuries were foreseeable as to CTC. Conversely the record is devoid of any evidence that the individual

Districts had knowledge of Humphrey's ongoing abuse or had any reason to believe Plaintiffs were foreseeably at risk of sexual abuse until Humphrey was arrested.

Relevant to all factors, Plaintiffs argue that Defendants had a statutory duty to train their employees to recognize and report signs of child abuse. *See* 24 P.S. §12-1205.6. In addition to mandatory training, individual employees of the public schools themselves are required under Pennsylvania law to immediately report suspected signs of child abuse including sexual abuse to ChildLine. *See* 23 Pa.C.S. §6311. As previously discussed, the record indicates that Defendant CTC failed to adequately train its employees to report child and sexual abuse, or at least promulgated a policy that contravened state law on the issue. But again, no such evidence has been submitted as to the Districts.

Plaintiffs also assert schools have a common law duty to maintain a safe environment for their students. *See Shamokin Area Sch. Dist. v. Am. Fed'n of State, Cnty., & Mun. Emps. Dist. Council 86*, 20 A.3d 579, 584–85 (Pa. Commw. Ct. 2011) (Babson, J. dissenting) (citing *Westmoreland Intermediate Unit # 7 v. Westmoreland Intermediate Unit # 7 Classroom Assistants Educ. Support Pers. Ass'n, PSEA/NEA,* 977 A.2d 1205, 1209 (Pa. Cmwlth. 2009) (vacated on other grounds) ("[a]

school system has an unmistakable duty to create and maintain a safe environment for its students as a matter of common law."). But this authority comes from the dissent of an employment case which in turn cites a case vacated by the Pennsylvania Supreme Court on other grounds. Besides the limited precedential value of that case, which Plaintiffs did not disclose through a proper citation, it only addresses the question of whether public policy prevented a school district from reinstating a groundskeeper terminated because of anger management issues. Thus, the court does not consider that case to have established a general duty of care for purposes of negligence.

Nonetheless, the court finds that the other factors and authority submitted by Plaintiffs at a minimum support imposing a duty on Defendants to train their employees to report sex abuse in conformity with state law.[6] Plaintiffs have submitted adequate evidence to raise a genuine dispute of material fact as to CTC's negligent breach of this duty but not as to the Districts.

---

[6] The court further notes that in interpreting the PSTCA the Pennsylvania Supreme Court has held a "governmental unit can only act through its employees[ ]" and in turn "there need not be an imputation of negligence for liability to be imposed." *Crowell v. City of Philadelphia*, 613 A.2d 1178, 1185 n. 11 (Pa.1992). Thus, a reasonable jury could also find CTC as an entity liable for negligently failing to report or otherwise stop Humphrey's abuse by operation of its employees' negligence to do the same.

Therefore, the motions for summary judgment of CTC will be **DENIED** but the motions of the Districts will be **GRANTED** with respect to Plaintiffs' negligence claims.

### 2. VICARIOUS LIABILITY

It is well settled in Pennsylvania that an employer can be held vicariously liable for the negligent acts of its employees which cause injuries to a third party, provided that such acts were committed during the course of and within the scope of their employment. *Fitzgerald v. McCutcheon,* 410 A.2d 1270, 1271 (Pa. Super. Ct. 1979). The conduct of an employee is considered "within the scope of employment" for purposes of vicarious liability if: (1) it is of a kind and nature that the employee is employed to perform; (2) it occurs substantially within authorized time and space limits; (3) it is actuated, at least in part, by a purpose to serve the employer; and (4) if force is intentionally used by the employee against another, the use of force is not unexpected by the employer. *Id*. In certain circumstances, liability of the employer may also extend to intentional or criminal acts committed by the employee. *Id.*

Plaintiffs claim that Defendants are vicariously liable for the negligent acts and omissions of CTC personnel, specifically Dr. Baileys, Mr. Filak, Mr. Granteed, Mr. Hudak, and Mr. Morgantini's failure to report or

- 45 -

otherwise stop Humphrey's abuse. They also argue that Defendants are liable for Dr. Carlucci's failure to report or otherwise stop Humphrey's abuse because she was effectively an employee of CTC, independent contractor, or ostensible agent of the Districts. Plaintiffs do not contend that Defendants are vicariously liable for Humphrey's abuse.

Conversely CTC argues that vicarious liability claims are not allowed under Section 8542(b)(9), and even if they were CTC cannot be held vicariously liable here because its employees had no knowledge of Humphrey's abuse from either direct reports or firsthand observations. Furthermore, to the extent CTC employees did fail to report Humphrey's abuse, CTC claims such conduct would be criminal and therefore outside the scope of its employees' employment.  Meanwhile the Districts argue that they cannot be held vicariously liable for the negligence of CTC employees or Dr. Carlucci because none of those individuals were their employees, independent contractors, or even ostensible agents.

Regarding Plaintiffs' ability to bring vicarious liability claims under Section 8542(b)(9), Section 8542(a) provides in general that "[a] local agency shall be liable for damages on account of an injury to a person or property [,]" if as relevant here, "[t]he injury was caused by the negligent acts of the local agency **or any employee** thereof acting within the scope

of his office or duties with respect to one of the categories listed in subsection (b)." 42 Pa.C.S. §8542(a) (emphasis added). Likewise, Section 8542(b) before listing the nine categories of exceptions states "[t]he following acts by a local agency **or any of its employees** may result in the imposition of liability on a local agency[.]"42 Pa.C.S. §8542(b) (emphasis added).[7] However, Section 8542(b)(9) states that in the context of sexual abuse a local agency is liable for injuries caused "by actions or omissions of the local agency which constitute negligence." 42 Pa.C.S. §8542(b)(9). Defendants argue that the legislature's decision to omit the phrase "or any employee thereof" from the specific text of Section 8542(b)(9) demonstrates its intent to limit claims under that subsection to only those claims based on direct not vicarious liability.

In support of this interpretation Defendants cite the federal statutory interpretation principle "that every word in a statute has meaning and to avoid interpreting one part of a statute in a manner that renders another part superfluous." *Disabled in Action of Pennsylvania v. Se. Pennsylvania Transp. Auth.*, 539 F.3d 199 (3d Cir. 2008) (citing *Rosenberg v. XM*

---

[7] The nine exceptions to immunity provided by the PSTCA are: (1) vehicle liability; (2) care, custody, or control of personal property; (3) real property; (4) trees, traffic controls, and street lighting; (5) utility service facilities; (6) streets; (7) sidewalks; (8) care, custody, or control of animals; and (9) sexual abuse. 42 Pa.C.S.A. §8542(b)(1)-(9).

*Ventures*, 274 F.3d 137, 141-42 (3d Cir. 2001)). Defendants also cite *Doe v. Loyalsock Tp. Sch. Dist.*, as an example of a case from this district where a vicarious liability claim under Section 8542(b)(9) was denied. 2022 WL 1110310 at **6, 8 (M.D. Pa. April 13, 2022). However, in that case the court found that a school district cannot be held vicariously liable for a teacher's sexual misconduct with students because such conduct is "outrageous and criminal" and therefore outside the scope of a teacher's employment. *Id*. Here, however Plaintiffs' vicarious liability claims are not based on Humphrey's abuse of Plaintiffs but rather on the other school staff members' cover up of that abuse.

Concerningly Defendants do not cite the more recent reported case from this District which interpreted Section 8542(b)(9) to exclude all vicarious liability claims under that section. See *Doe v. Williamsport Area Sch. Dist.*, 699 F. Supp. 3d 306, 328-329 (M.D. Pa. 2023) (Brann, J.); *see also L.S. v. Hannover Area School District*, 2024 WL 2393038, *12 (M.D. Pa. May 23, 2024) (Munley, J.) (providing overview of federal cases interpreting Section 8542(b)(9) and specifically noting that *Doe* has construed Section 8542(b)(9) to preclude vicarious liability under that section.)

In the absence of decisions from the Pennsylvania Supreme Court interpreting Section 8542(b)(9), the *Doe* Court construed the statute to preclude vicarious liability claims against a school district when that school district's employees were not named as defendants. *Doe*, 699 F. Supp. 3d at 328-329 (M.D. Pa. 2023). That case is factually distinct in that the sexual assault alleged by the plaintiff there was committed by another student *outside of school*, whereas here, the assaults alleged by Plaintiffs were committed by a teacher *at school*. Still, plaintiffs in both cases brought vicarious liability claims against their schools based on school employees' failure to prevent or stop sexual abuse.

To reach this conclusion the *Doe* Court reasoned based on academic canons of statutory interpretation that whereas here there is a conflict between a general provision (Sections 8542(a)(2) and (b)) and a specific provision of a law (Section 8542(b)(9)), the more specific provision should prevail. *Doe*, 699 F. Supp.3d at 329 (citing Antonin Scalia & Bryan A. Garner, *Reading Law*, 158 (2012)). As such the "more narrow" language of Section (b)(9) that does not include the phrase "or any employee thereof" must be applied to exclude vicarious liability claims under that section. *Id*.

*Doe* further notes that while Sections (b)(1)-(8), were enacted as part of the original PSTCA and do not clash with Section 8542(a)(2) and (b)'s overarching language, Section (b)(9) was added to the PSTCA in a subsequent, 2019 amendment. *See Id*. (citing Act of Nov. 26, 2019, P.L. 641, No. 87 (2019)). The *Doe* Court therefore construes Section (b)(9) as a successive statute contradicting and effectively repealing its predecessor where such contradictions arise. *Id*. It also notes that PSTCA's waivers are to be "strictly construed and narrowly interpreted," *Weaver v. Franklin Cnty.*, 918 A.2d 194, 200 (Pa. Cmwlth. Ct. 2007), "because the legislature's intent ... is to shield government from liability, except as provided for in the statute themselves[.]" *Jones v. SEPTA*, 772 A.2d 435, 440 (Pa. 2001), Thus, it concludes that there is "no room for doubt[ ] it is the municipal body itself whose negligence must cause sexual abuse under Section (b)(9)." *Id.* Nonetheless, this court does see room for doubt and respectfully disagrees with the *Doe* Court's interpretation because it failed to predict how the Pennsylvania Supreme Court would interpret the statute.[8]

---

[8] While not required to address a plaintiff's ability to bring a vicarious liability claim under Section 8542(b)(9), Judge Munley also declined to follow the *Doe* Court's interpretation of the statute. *See L.S. v. Hanover Area Sch. Dist.*, 2024 WL 2393038, at \*12 (M.D. Pa. May 23, 2024).

Unlike in cases of federal statutory interpretation, in cases of state statutory interpretation, where the highest state court is silent, this court must predict how that court would interpret the statute. *Buffetta*, 230 F.3d at 637 (where there is no reported decision by the Pennsylvania Supreme Court or any other Pennsylvania court addressing the precise issue before it, it is the duty of the District Court to predict how the Pennsylvania Supreme Court would interpret the law if presented with this case); *see also* Mid-*Century Ins. Co. v. Werley*, -- F. 4th --, 2024 WL 4049221, at *4 (3d Cir. Sept. 5, 2024) (reaffirming this principle.). In predicting the interpretation of the Pennsylvania Supreme Court, a federal court must give due regard, but not conclusive effect, to the decisional law of lower state courts. *See, e.g., Burke v. Maassen,* 904 F.2d 178, 182 (3d Cir.1990).

The opinions of intermediate appellate state courts are "not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." *West v. AT & T Co.,* 311 U.S. 223, 237 (1940). Neither the Pennsylvania Supreme Court nor Pennsylvania's intermediate appellate state courts have specifically addressed the ability of plaintiffs to bring vicarious liability claims under Section 8542(b)(9), so this court cannot simply interpret

Section 8542(b)(9) as the *Doe* court did but instead must predict how the Pennsylvania Supreme Court would interpret the statute.

When the Pennsylvania Supreme Court interprets a statute its "objective first and foremost is 'to ascertain and effectuate the intention of the General Assembly.'" *Bold v. Dep't of Transportation, Bureau of Driver Licensing*, -- A.3d --, 2024 WL 3869082, at *4 (Pa. Aug. 20, 2024) (citing 1 Pa.C.S. §1921(a)). When possible, the court interprets a statute "to give effect to all of its provisions." *Id*. citing 1 Pa.C.S. §1922(2). The words of a statute "shall be construed according to ... their common and approved usage." *Id*. (citing §1903(a)). "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." *Id*. (citing 1 Pa.C.S. §1921(b)). However, when language is ambiguous or unclear, the Court considers "other factors, including (but not limited to): [t]he occasion and necessity for the statute; [t]he mischief to be remedied; object to be obtained; and [t]he consequences of a particular interpretation." *Id*. (citing 1 Pa.C.S. §1921(c)).

Of particular relevance to the analysis here the Court interprets a remedial statue "liberally ... to effect [its] objects and to promote justice." *Id*. (citing *O'Rourke v. Commonwealth*, 778 A.2d 1194, 1203 (Pa. 2001)

("[R]emedial statutes are to be liberally construed to effect their objects.")). Also, of relevance here, it is presumed that when the Pennsylvania Supreme Court "has construed the language used in a statute, the General Assembly in subsequent statutes on the same subject matter intends the same construction to be placed upon such language." *Id*. quoting 1 Pa.C.S. §1922(4)

The year before Section 8542(b)(9) was enacted the Pennsylvania Supreme Court held that to plead a negligence claim under the PSTCA, a plaintiff must allege: "(1) that the government would have been liable under common law or statute for the[ir] injury; (2) that the[ir] injury was caused by the negligent act of **the government or its agent** acting within the scope of his duties; and (3) that the negligent act falls within one of the exceptions to immunity enumerated in subsection 8542(b)[.]" *Balentine v. Chester Water Auth.*, 191 A.3d 799, 809 (Pa. 2018) (citing *Lindstrom v. City of Corry*, 563 Pa. 579, 763 A.2d 394, 397 (2000)) (emphasis added). In turn the Court held that under Section 8542(b)(1) (exception for vehicle liability) a plaintiff plausibly pleads a claim "not only [where] a government employee operated the vehicle, but also [where the] **injury was caused by the employee's negligent act**." *Id*. at 123. (emphasis added). This is despite the fact that Section (b)(1) imposes

- 53 -

liability for only "the [negligent] operation of any motor vehicle in the possession or control of the local agency." §8542(b)(1). Like Section 8542(b)(9) it does not use the phrase "or any employee thereof" in tandem with the term local agency. In fact, it does not even use the word employee.

It must then be presumed that the General Assembly also intended Section 8542(b)(9) to impose liability on local agencies for sexual abuse that was caused by their employees' negligent acts even though it did not explicitly use the phrase "or any employee thereof" in tandem with the term local agency. Under Pennsylvania's canons of statutory interpretation, which District Courts are required to apply in cases like this, successive statutes are presumed to *follow* not supersede their predecessors for the purposes of statutory interpretation.

This interpretation is further supported by the object of the PSTCA which is to remedy torts committed by local agencies *and* their employees. Section 8542(b)(9) merely expands the range of torts covered by the statute to include those related to sexual abuse. This court does not interpret the statute's objective to narrow and exclude sexual abuse related torts committed by local agency employees. Although the *Doe* court is correct that the PSTCA is intended to shield local agencies from

- 54 -

liability and exceptions to it are narrow, Section 8542(b)(9) is part of a broader remedial scheme.

42 Pa.C.S. Section 8553 generally limits damages awards under the PSTCA to $500,000 absent permanent bodily injury. However, Section 8553(e) provides that none of the damage limitations in the PSTCA shall apply to damage awards under Section 8542(b)(9). Likewise, 42 Pa.C.S. Section 5533(b)(2)(i) extends the statute of limitations for plaintiffs, whose claims under Section 8542(b)(9) accrue before age 18, to age 55. The General Assembly additionally made Section 8542(b)(9) retroactive to causes of action that arose before the legislation's effective date and for which the limitations period had not yet expired. *See* Act of Nov. 26, 2019, No. 87, §10(3)(ii). As such, Section 8542(b)(9) should also be considered a remedial statute that under Pennsylvania law this court must liberally interpret.

The "other factors" considered by the Pennsylvania Supreme Court further support this court's interpretation. The occasion and necessity of enacting Section 8542(b)(9) was increased awareness of public institutions covering up sexual abuse and the object to be obtained was to remedy and deter cover ups of sexual abuse by public institutions. *See Doe by Brown v. Harrisburg Sch. Dist.*, 2020 WL 4584371, at *5 (M.D. Pa.

- 55 -

Aug. 10, 2020) (Conner, J.) (citing PA. H.R. Jour., 2019 Reg. Sess. No. 24 at 510 (Rozzi, Rep.) (Apr. 10, 2019) ("[t]he intended purpose of this amendment [Section 8542(b)(9)] to the PSTCA was to "waive sovereign immunity for public entities guilty of covering up childhood sexual abuse.")).[9] The consequence of this court's interpretation is that public institutions will be held accountable for all cover ups of sexual abuse, as opposed to a narrower interpretation under which public institutions will only be held accountable for adopting an official policy of covering up sexual abuse. There would be no remedy, no accountability, and no deterrent regarding individual actions that collectively amount to a systemic cover up of sexual abuse under that construction. Accordingly, this court predicts that the Pennsylvania Supreme Court would interpret

---

[9] While the Pennsylvania Supreme Court's canons of statutory interpretation do not require this court to consider Section 8542(b)(9)'s legislative history, the court notes that in proposing House Bill 962, which enacted Section 8542(b)(9), State Representative Mark Rozzi, the bill's prime sponsor, further stated that "HB 962 provides for **absolute parity** in the handling of sexual abuse claims between public and private institutions." PA. H.R. Jour., 2019 Reg. Sess. No. 24 at 510 (Rozzi, Rep.) (Apr. 10, 2019) (emphasis added.). Vicarious liability claims regarding sexual abuse are of course allowed against private institutions. But, if Section 8542(b)(9) were construed to prohibit vicarious liability claims against local agencies then there would still not be parity in the handling of sexual abuse claims between all public and private institutions. Only by interpreting Section 8542(b)(9) to allow vicarious liability claims is the legislature's intent of absolute parity achieved.

the PSTCA to allow vicarious liability claims under Section (b)(9) and will in turn allow Plaintiffs' vicarious liability claims to proceed under that statute.[10]

Regarding CTC's arguments that it cannot be held liable for its employees failing to report or otherwise stop Humphrey's abuse it is clear from the record that a reasonable jury could find these employees acted negligently within the scope of their employment. CTC once again argues that its employees had no knowledge of Humphrey's alleged sexual abuse from either direct reports or their own observations. But as previously discussed, Plaintiffs have submitted evidence that CTC employees—namely, Dr. Baileys, Mr. Filak, Mr. Granteed, Mr. Hudak, and Mr. Morgantini all received either direct reports from Plaintiffs about Humphrey's abuse or witnessed it firsthand yet never reported that abuse

---

[10] The court again notes that in interpreting the PSTCA the Pennsylvania Supreme Court has held a "governmental unit can only act through its employees[ ]" and in turn "there need not be an imputation of negligence for liability to be imposed." *Crowell v. City of Philadelphia*, 613 A.2d 1178, 1185 n. 11 (Pa.1992). Thus, even if this court adopted *Doe's* narrower interpretation of the statute, CTC as an entity could still be held liable for negligently failing to report or otherwise stop Humphrey's abuse by operation of its employees' negligence to do the same. Similarly, if a *Monell* type standard was applied to claims under Section 8542(b)(9), as the *Doe* court seems to envision, it could be argued that the failure of CTC's executive decision makers, Dr. Baileys and Mr. Filak, to address Humphrey's abuse of Plaintiffs, amount to an official policy for which CTC could be held liable.

- 57 -

to ChildLine. The fact that these individuals all deny knowledge of Humphrey's abuse does not entitle CTC to summary judgment but instead necessitates trial because there is clearly a genuine dispute of material fact on this issue.

Still, to the extent its employees failed to report Humphrey's abuse, CTC argues it cannot be held liable for their failure because such inaction would constitute a felony of the third degree and in turn constitute criminal conduct outside the scope of their employment. While generally, employers cannot be held civilly liable for their employees' criminal conduct, "[i]n certain circumstances, liability of the employer may also extend to intentional or criminal acts committed by the employee. *Fitzgerald,* 410 A.2d at 1271 (Pa. Super. Ct. 1979). However, if the act is done for personal reason, or in an outrageous manner, it is not done within the scope of employment. *Brezenski v. World Truck Transfer, Inc.*, 755 A.2d 36, 39 (Pa. Super. Ct. 2000) (citing Restatement (Second) of Agency § 228 (1958); *see also Just. v. Lombardo*, 208 A.3d 1057, 1068 (Pa. 2019) ("This Court has adopted the Restatement's scope of employment analysis in vicarious liability cases.")). While CTC's employees alleged failure to report child sex abuse may be a crime, it was negligent and not necessarily intentional conduct, and there was no evidence that it was

done for personal reasons or in an outrageous manner. Thus, it remains within the sovereign immunity exception created by Section 8542(b)(9), and a reasonable jury could find Dr. Baileys, Mr. Filak, Mr. Granteed, Mr. Hudak, and Mr. Morgantini's collective negligence caused Plaintiffs' injuries.

The same however cannot be said about the Districts. Plaintiffs claim that the Districts are liable for CTC employees' alleged negligence because they were also the Districts' employees, independent contracts, or ostensible agents. According to Plaintiffs, for the court to determine whether an employer-employee relationship exists between parties, the court must look at the guidelines established in *Hammermill Paper Co. v. Rust Engineering Co.*, where the Pennsylvania Supreme Court held:

> While no hard and fast rule exists to determine whether a particular relationship is that of employer-employee…, certain guidelines have been established and certain factors are required to be taken into consideration:
>
> Control of manner work is to be done;
>
> Responsibility for result only;
>
> Terms of agreement between the parties;
>
> The nature of the work or occupation;
>
> The skill required for performance;

- 59 -

> Whether one employed is engaged in a distinct occupation or business;
>
> Which party supplies the tools;
>
> Whether payment is by the time or by the job;
>
> Whether work is part of the regular business of the employer, and also the right to terminate the employment at any time.

243 A.2d 389, 392 (Pa. 1968) (quoting *Stepp v. Renn*, 135 A.2d 794, 796 (1957)). Conversely, the Districts rightfully point out there is no indication in the record that CTC employees entered into contracts with the District, they worked on any of the Districts' premises, the Districts had any control over the manner in which they performed their work, the Districts supplied them with the tools or resources required for their positions, the Districts paid their salaries, or, or any of the Districts' could have unilaterally terminated their employment.

Pennsylvania courts have also long distinguished employees of vocational-technical schools from sending school districts. *See, e.g.*, *Com. ex rel. Waychoff v. Tekavec*, 319 A.2d 1 (Pa.1974) (holding that employee of intermediate unit was not considered employee of sending school district); *Newell v. Wilkes-Barre Area Vocational Technical Sch.*, 670 A.2d 1190 (Pa. Commw. Ct. 1996) (noting that vocational-technical

school had budget and student body "drawn from multiple districts" but "function[ed] as a conglomerate district itself with an independent Joint Operating Committee, board of directors and superintendent"). Plaintiffs claim these cases are not applicable because they arose in the employment and not in the negligence context. But the Districts' vicarious liability here is ultimately a question of employment not negligence law; so these cases distinguishing vocational-technical and public school employees are clearly applicable to the court's analysis. Accordingly, CTC employees, namely Dr. Baileys, Mr. Filak, Mr. Granteed, Mr. Hudak, and Mr. Morgantini were not employees of any of the individual Districts and, thus, the Districts cannot be held vicariously liable for their alleged negligence.

Nonetheless, Plaintiffs argue that these employees were independent contractors or ostensible agents of the Districts. The doctrine of ostensible agency is well-recognized in Pennsylvania. Section 429 of the Restatement (Second) of Torts provides, in pertinent part:

> One who employs an independent contractor to perform services for another which are accepted in a reasonable belief that the services are being rendered by the employer or his agents or by his servants, is subject to liability for physical harm caused by the negligence of the contractor that is supplying such services to the same extent as though the employer was supplying them by himself or by his servants.

Restatement (Second) of Torts §429; *see also Capan v. Divine Providence Hosp.*, 430 A.2d 647 (Pa. Super. Ct. 1980) (Adopting Section 429). In *Capan*, the Superior Court also held that a hospital may be held liable for the acts of a non-employee physician in certain circumstances. The first circumstance is where a patient looks to the institution rather than the individual physician for the care. *Id*. at 649. The second circumstance under which the institution may be held liable for the acts of a non-employee is when the hospital holds the physician out as its employee. *Id*. This occurs when "the hospital acts or omits to act in some way which leads the patient to a reasonable belief that he is being treated by the hospital or one of its employees." *Id.*

Here, Plaintiffs argue that both circumstances are present because they looked to the Districts for education and there are genuine disputes of material fact as to whether CTC and the Districts' conduct led them to reasonably believe CTC employees were actually District employees. Conversely, the Districts argue that the record demonstrates Plaintiffs did not look to them for all their educational needs given the fact that they specifically enrolled at CTC to take classes not offered by their home Districts. Furthermore, the record does not include any evidence that any

District held out any CTC employees let alone the ones at issues here as their own employees. This view is further belied by the fact there is no evidence Plaintiffs ever reported Humphrey's abuse to personnel at their respective Districts. Had Plaintiffs believed CTC employees like Humphrey or teachers, teachers' aid, and administrators, who allegedly failed to report his abuse were District employees, they would have also reported said abuse to the Districts. Accordingly, a reasonable jury could not find that CTC employees were independent contractors or ostensible agents of the Districts.

For similar reasons, a reasonable jury could not find that Dr. Carlucci was an employee, independent contractor, or ostensible agent of the Districts, but could find that she was an agent or employee of CTC. During the 2016-2017 school year, when Plaintiffs were sexually abused by Humphrey, Dr. Carlucci was not employed by CTC, nor the Districts, but rather the NEIU as an educational consultant. Like with CTC employees, there is no evidence that any of the Districts held out Dr. Carlucci as one of their own employees or that she ever worked on any of the Districts' premises. However, there is evidence that Dr. Carlucci worked on CTC's premises where she allegedly learned about Humphrey's abuse of Plaintiffs. There is also evidence that during the 2016-2017 school year,

- 63 -

Dr. Carlucci reported to CTC Director, Dr. Baileys. These facts raise a genuine dispute of material fact as to whether Dr. Carlucci was an independent contractor, ostensible agent, or even employee of CTC, and, thus, a reasonable jury could find CTC vicariously liable for her alleged negligence in not reporting or otherwise stopping Humphrey's abuse. Conversely, since there is no evidence she was an ostensible agent let alone an employee of any of the Districts, a reasonable jury could not find any of the Districts vicariously liable for her alleged negligence.

Therefore, the motions for summary judgment of CTC will be **DENIED** but the motions of the Districts will be **GRANTED** with respect to Plaintiffs' vicarious liability claims.

### 3. NEGLIGENT HIRING, SUPERVISION, AND RETENTION

Under Pennsylvania law, a plaintiff seeking to recover on a negligent hiring theory must show: (1) the employer defendant knew or should have known of the violent propensity of the employee and (2) such employment creates a situation in which a third party may be harmed. *Coath v. Jones*, 419 A.2d 1249, 1250 (Pa. Super. Ct. 1980) (citing *Dempsey v. Walso Bureau Inc.*, 246 A.2d 418 (Pa. 1968)). An employer defendant is liable for negligent supervision when it negligently supervises an activity, employs an improper person in work that risks harm to others,

or permits an employee to commit tortious conduct using instrumentalities in the employer's control. *Brezenski,* 755 A.2d at 39-40 (Pa. Super. Ct. 2000) (citing *Dempsey v. Walso Bureau, Inc.*, 246 A.2d 418 (Pa. 1968)).

To prove negligent retention, the plaintiff must show that his loss resulted from a failure to exercise ordinary care to prevent an intentional harm by an employee acting outside the scope of his employment, that the tort was committed on the employer's premises, and that the employer knew or had reason to know of the necessity and ability to control the employee. *Dempsey*, 246 A.2d at 420.

Relevant to each of these theories the Pennsylvania Supreme Court has also emphasized the importance of the employer defendant's knowledge of prior misconduct by its employee. *See Hutchinson ex. rel. Hutchinson v. Luddy*, 742 A.2d 1052, 1059 (Pa. 1999) (holding that where Bishops of defendant Diocese knew that priest had a propensity for pedophilic behavior and were aware of several instances of such conduct, the Diocese could be liable for failing to take appropriate precautions to prevent him from molesting more children, including terminating his employment.)

Plaintiffs argue that Defendants were negligent in hiring, supervising, retaining, investigating, and evaluating Humphrey because

- 65 -

they knew or should have known about his propensity for sexual misconduct and as well as his ongoing abuse of Plaintiffs. Conversely Defendants argue that negligent evaluation and investigation claims are not actionable in Pennsylvania, the Commonwealth has not created a sovereign immunity exception for negligent hiring, supervision, and retention claims, and even if these claims could proceed a reasonable jury could not find Defendants liable on them.

Defendants assert that federal courts have held no cause of action exists in Pennsylvania for negligent investigation or evaluation. *See Mann v. J.E. Baker Co.*, 733 F.Supp. 885, 889 (M.D. Pa. 1990) (holding that there is no cause of action for negligent evaluation under Pennsylvania law); *Wilson v. Equifax*, 1998 WL 122098, at *2 (W.D. Pa. Feb. 3, 1998) (denying plaintiffs' motion for partial summary judgment on negligent investigation claim due to lack of statute or judicial decisions supporting existence of such cause of action). Plaintiffs distinguish these cases on the basis that they were all decided before the enactment of Section 8542(b)(9). Plaintiffs also cite the *Hutchinson* court's discussion of the employer defendant Diocese's failure to investigate reports of sexual abuse to claim that negligent "investigation" or "evaluation" are "part and

parcel" of a negligent supervision and/or retention claim under Pennsylvania law.

The court does not find Section 8542(b)(9) in anyway supersedes *Mann* or *Wilson,* or otherwise creates an independent cause of action for negligent investigation or evaluation. However, the court agrees with Plaintiffs that these theories are inherent in claims for negligent supervision and retention. Accordingly, Plaintiffs' allegations that Defendants failed to investigate and evaluate Humphrey will not be dismissed but will only be allowed to proceed insofar as they support Plaintiffs' actionable claims for negligent hiring, supervision, and retention.

On the issue of sovereign immunity, Defendants argue that they cannot be sued for negligent hiring, supervision, or retention because such claims are not enumerated exceptions under the PSTCA. In support of this argument, Plaintiffs cite a Commonwealth Court and three federal district court opinions that they assert dismissed such claims against local agency employer defendants because those defendants were immune under the statute. *See Robson v. Penn Hills Sch. Dist.*, 437 A.2d 1273, 1275 (Pa. Commw. Ct. 1981); *Joyner v. Sch. Dist. of Phila.*, 313 F.Supp.2d 495, 504 (E.D. Pa. 2004); *Gines by Gines v. Bailey*, 1992 WL

394512, at *5 (E.D. Pa. Dec. 12, 1992); *Branning v. Wayne Cty.*, 2017 WL 3927611, at *5 (M.D. Pa. Sept. 7, 2017). Besides the fact these cases are not binding on this court, the court also disagrees with Defendants' assertion they support immunity on Plaintiffs' claims.

None of these cases involved a claim under Section 8542(b)(9). In fact, they were all decided before its enactment. *Robson* involved a claim for negligent supervision of a student who injured another student under Section 8542(b)(2) (personal property exception), which specifically limits liability for claims brought under it, stating "the only losses for which damages shall be recoverable under this paragraph are those property losses suffered with respect to the personal property in the possession or control of the local agency." Federal courts in *Joyner*, *Gines,* and *Banning* all dismissed negligent hiring, supervision, and retention claims because they found that the *injuries,* not the claims alleged by Plaintiff did not fall into any of the categories enumerated in Section 8542(b) *before* the enactment of Section 8542(b)(9). The Eastern District of Pennsylvania in *Gines* also notably dismissed plaintiff's direct negligence claim for the same reason.

Since the enactment of Section 8542(b)(9), which explicitly created a sovereign immunity exception for injuries caused by "actions or

omissions of the local agency which constitute negligence," it is clear that Defendants can be sued for direct negligence related to sex abuse. Likewise, it should be clear that Defendants can be sued for negligent hiring, retention, and supervision claims related to sexual abuse. Hiring, retention, and supervision are all acts that Plaintiff here argue were performed negligently by local agencies and caused their sex abuse related injuries. For the same reason the *Doe* court determined that the PSTCA does not bar negligence, negligent infliction of emotional distress, and negligent failure to rescue claims asserted against a defendant school district "to the extent that the plaintiff alleged that the school district's negligence caused sexual abuse." *L.S.,* 2024 WL 2393038 at *12 n. 12 (citing *Doe*, 699 F.Supp. 3d at 330-332.) On this issue the court is in full agreement with the *Doe* court. Accordingly, Plaintiffs' negligent hiring, supervision, and retention claims to the extent they caused sexual abuse fall within Section 8542(b)(9)'s sovereign immunity exception and Defendants cannot claim immunity from them.

As to the issue of whether a reasonable jury could find Defendants liable on Plaintiffs' negligent hiring, retention, and supervision claims' there are genuine disputes of material fact as to CTC but not the Districts on the latter two allegations but no dispute on the former as to any

Defendant. Plaintiffs submit evidence that Humphrey had inappropriate sexual contact with a coworker during a previous job at Toyota of Scranton and argue CTC failed to properly check his references to uncover this information. In response CTC points to evidence that it checked Humphrey's prior employment reference at Toyota via email and in *response* was not told about any prior sexual misconduct. But this evidence is only the email it received in *response* from Toyota confirming Humphrey's previous dates of employment. (Doc. 129-8.) There is no indication that CTC asked Toyota for any other information about Humphrey's employment there. Moreover, there is no evidence that Toyota even knew about Humphrey's prior misconduct.

Plaintiffs claim that Humphrey, while working at Toyota, inappropriately touched an adult coworker in the same way he would later inappropriately touch them. However, this incident allegedly occurred outside of work and was not reported to the police until after Humphrey was charged with abusing Plaintiffs. There is no evidence in the record that Toyota knew or should have known about this incident at the time CTC checked Humphrey's references and could have informed CTC of Humphrey's misconduct even if asked. Accordingly, a reasonable jury

could not find that CTC could have and should have known about Humphrey's propensity for sexual misconduct before hiring him. [11]

Nonetheless, as previously discussed, there is abundant evidence in the record that multiple CTC administrators, namely Dr. Baileys and Mr. Filak, who had the power to supervise and terminate Humphrey, were told about Humphrey's abuse, and did nothing to stop it for months. Accordingly, a reasonable jury could find that CTC permitted Humphrey to continue sexually abusing Plaintiffs on school premises, despite knowing the need to stop him and, in turn, negligently supervised and retained him.

Conversely, a reasonable jury could not find the same as to the Districts. As previously discussed, Humphrey was not employed by the individual Districts and was not unilaterally hired, supervised, or retained by them. While a representative of each District, along with multiple other representatives from school districts not named in this lawsuit, sat on the JOC, which did approve of Humphrey's hire, none of the Districts'

---

[11] Plaintiffs have also submitted a lengthy expert report that summarizes the evidence of numerous deficiencies in the CTC's hiring of Humphrey and his background check process. (Doc. 115-1 pp. 83-85.) But there is still no evidence that a more extensive background check of Humphrey would have revealed passed sexual misconduct by him, given that his only other known victim did not disclose his conduct until after he was arrested for sexually abusing Plaintiffs.

representatives acted or could have acted unilaterally to hire him. After Humphrey was hired none of the individual Districts' supervised Humphrey and he never worked on any of the Districts' premises. Likewise, none of the Districts had unilateral power to terminate Humphrey, and, in any event, there is no evidence that any of the Districts knew or had reason to know about the need to terminate him prior to May 13, 2017. At which point Humphrey was promptly suspended.

Therefore, the motions for summary judgment of CTC will be **DENIED** to the extent Plaintiffs allege negligent supervision and retention but **GRANTED** to the extent Plaintiffs allege negligent investigation, evaluation, and hiring. The motions of the Districts will be **GRANTED** to all Plaintiffs' allegations under this count.

## IV.   CONCLUSION

Based on the foregoing, the court will **DENY** CTC's motions for summary judgment on Plaintiffs' Title IX sexual harassment, Section 1983, and common law claims, except to the extent Plaintiffs allege negligent investigation, evaluation, and hiring, and will **GRANT** CTC's motions for summary judgment on J.R. and B.W.'s Title IX retaliation claims and to the extent Plaintiffs allege negligent investigation,

evaluation, and hiring, as well as all the Districts' motions for summary

judgment on all claims. Appropriate orders follow.


                  *s/ Malachy E. Mannion*
                  **MALACHY E. MANNION**
                  **United States District Judge**

**Dated:  September 27, 2024**
19-1146-03 all captions

- 73 -